1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  DALE M. SPURLIN and<br>MARY SPURLIN, | Case No.:  19-cv-02049-AJB-AHG |
| 12 | |
| 13                          Plaintiffs | **ORDER DENYING DEFENDANTS'<br>MOTION TO DISMISS FOR LACK<br>OF SUBJECT MATTER<br>JURISDICTION** |
| 14  v. | |
| 15 | |
| 16  AIR & LIQUID SYSTEMS<br>CORPORATION, et al., | **(Doc. No. 181.)** |
| 17 | |
| 18                          Defendants | |

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

                                        1

1    Before the Court is a joint motion to dismiss for lack of subject matter jurisdiction

2  filed by Warren Pumps, LLC,[1] Foster Wheeler Energy Corporation and Foster Wheeler

3  LLC (collectively "Foster Wheeler"), IMO Industries, Inc. ("IMO"), and Crane Co.

4  ("Crane") (collectively, "Defendants").[2] (Doc. No. 181.) Defendants seek dismissal

5  pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), arguing that the Court lacks

6  jurisdiction over this case because they are entitled to "derivative sovereign immunity"

7  pursuant to *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940). For the reasons set forth

8  below, the Court **DENIES** Defendants' motion.

9  **I.    BACKGROUND**

10    This is a maritime tort case concerning Dale M. Spurlin's ("Mr. Spurlin") alleged

11  exposure to asbestos-containing equipment during his service in the United States Navy

12  from 1963 to 1969. Mr. Spurlin contends that his exposure to asbestos while aboard two

13  Navy ships caused him to develop mesothelioma. Mr. Spurlin and his wife Mary Spurlin

14  (collectively, "Plaintiffs") sued various equipment manufacturers with which the Navy

15  contracted, claiming that the manufacturers are liable for their injuries.

16    Mr. Spurlin served in the U.S. Navy from 1963 to 1969 and was aboard two naval

17  ships, the *USS McGinty* and the *USS Rowan*. While on reserve duty, he spent one weekend

18  a month on the *McGinty*, plus an 18-day cruise. Then, while on active duty from December

19  1964 through October 1966, Mr. Spurlin spent approximately two years straight on the

20  *Rowan*. Mr. Spurlin was a boiler tender. He operated and maintained the boilers and related

21  equipment in the fire rooms. Plaintiffs bring this action against Defendants, asserting that

22  Mr. Spurlin's mesothelioma was caused by exposure to asbestos from, among other

23

24  [1] The Court notes that on October 8, 2021, Plaintiffs filed a notice of settlement as to Defendant Warren
25  Pumps, LLC, and the settlement disposition conference is scheduled for November 16, 2021. (Doc. Nos.
    190, 191.) In addition, the parties previously represented that a notice of settlement will be filed as to
26  Defendant Air & Liquid Systems Corporation, but none has been filed.

27  [2] It does not appear that Defendant Clarke Reliance joined the instant motion to dismiss. The preamble to
28  Defendants' opening and reply briefs name the defendants who have brought the motion, but do not
    mention Clarke Reliance.

1 sources, asbestos-containing insulation, gaskets, and packing associated with handling

2 Defendants' products during his service in the Navy.

3 **II.    ANALYSIS**

4       More than two years into litigation and after resolution of the parties' exhaustive

5 cross-motions for summary judgment, Defendants now bring a Rule 12(b)(1) motion to

6 dismiss claiming that the Court lacks subject matter jurisdiction over this case. (Doc. No.

7 181.) In support of their motion, Defendants argue that they are entitled to derivative

8 sovereign immunity pursuant to *Yearsley*, which they contend is a jurisdictional bar

9 warranting dismissal of Plaintiffs' claims. The Court disagrees.

10       **A.    *Yearsley* Immunity is Not a Jurisdictional Bar**

11       To begin, the Court finds that *Yearsley* immunity is not a jurisdictional bar, but

12 rather, an affirmative defense against the merits of Plaintiffs' claims. The Court

13 acknowledges that there is a circuit split on whether *Yearsley* immunity is jurisdictional. In

14 *Adkisson v. Jacobs Eng'g Grp., Inc.*, the Sixth Circuit noted the split between the Fourth

15 and Fifth Circuits on this issue and ultimately sided with the Fifth Circuit, concluding that

16 "*Yearsley* is not jurisdictional in nature." 790 F.3d 641, 646–47 (6th Cir. 2015). Upon

17 review of the parties' arguments and case law presented, the Court agrees with the Fifth

18 and Sixth Circuits' conclusion.[3]

19       By way of background, *Yearsley* involved a landowner's claim for damages against

20 a private company whose work improving the navigation of the Missouri River, pursuant

21 to its contract with the Federal Government, eroded part of the plaintiff's land. *See* 309

22 U.S. at 19. The *Yearsley* court noted that it was "undisputed that the work which the

---

[3] Neither party identified binding authority on this issue, and the Court is aware of none. Additionally, because the Fourth Circuit did not elaborate on its conclusion that *Yearsley* immunity is jurisdictional, the Court declines to rely on it. *See Adkisson*, 790 F.3d at 646 ("The Fourth Circuit has held, albeit without elaboration, that the bar is indeed jurisdictional.") (citing *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000)). Lastly, the Court is unpersuaded by Defendants' argument that a recent Fifth Circuit decision supports the conclusion that *Yearsley* is jurisdictional because the case they cited expressly states that "*Yearsley* immunity is an affirmative defense, and Couvillion bore the burden of proof on the defense at trial." *Taylor Energy Co., L.L.C. v. Luttrell*, 3 F.4th 172, 175 (5th Cir. 2021).

19-cv-02049-AJB-AHG

contractor had done in the river bed was all authorized and directed by the Government of the United States" and "performed pursuant to the Act of Congress." *Id.* at 20. Under these facts, the Supreme Court explained that where the Government's "authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." *Id.* at 20–21. Accordingly, the *Yearsley* court held that the contractor was not liable to the landowner.

As to whether the immunity contemplated in *Yearsley* is jurisdictional in nature, the Court observes that *Yearsley* made no apparent mention of jurisdiction or otherwise address the court's authority to hear the case. What is apparent, however, is that the immunity flowed from a finding that the contractor was acting as an agent or officer of the Government. And because the undisputed facts in *Yearsley* established that the contract was validly conferred and the contractor did not exceed his authority thereunder, the contractor could not be found liable. *See id.* at 21 ("Where an agent or officer of the Government purporting to act on its behalf has been held to be liable for his conduct causing injury to another, the ground of liability has been found to be either that he exceeded his authority or that it was not validly conferred.") The agency and limiting principles at play in *Yearsley* therefore suggest that the immunity is akin to qualified immunity, which is "an affirmative defense that should be pled by the defendant." *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993). The Sixth Circuit in *Adkisson* concluded the same: "*Yearsley* immunity is, in our opinion, closer in nature to qualified immunity for private individuals under government contract, which is an issue to be reviewed on the merits rather than for jurisdiction." 790 F.3d at 647 (citing *Filarsky v. Delia*, 566 U.S. 377, 394 (2012)).

Additionally supportive, in *Campbell-Ewald Co. v. Gomez*, the Supreme Court considered the question: "Do federal contractors share the Government's unqualified immunity from liability and litigation?" and answered: "they do not." 577 U.S. 153, 166 (2016). Indeed, the Supreme Court appeared to criticize Campbell's assertion of a so-called

1   "derivative sovereign immunity," stating that he could "offer no authority for the notion

2   that private persons performing Government work acquire the Government's embracive

3   immunity." *Id.* The *Campbell* court explained that while government contractors obtain

4   certain immunity in work performed pursuant to their contracts with the United States,

5   "[t]hat immunity, however, unlike the sovereign's, is not absolute." *Id.* This reflects that

6   private companies do not gain blanket protection from suit, simply by contracting with the

7   United States, but may be protected from liability under a *Yearsley* affirmative defense,

8   much like qualified immunity, depending on the circumstances of a case. *See id.* at 156

9   ("We hold that the petitioner's status as a Government contractor does not entitle it to

10  'derivative sovereign immunity,' *i.e.,* the blanket immunity enjoyed by the sovereign.").

11  The Supreme Court's discussion of *Yearsley* is consistent with that of the Sixth Circuit.

12      Also instructive here, when the Supreme Court considered the contractor's asserted

13  *Yearsley* immunity, it did not—as Defendants here would have this Court do—review the

14  case for subject matter jurisdiction under Rule 12(b)(1). Rather, the *Campbell* court

15  reviewed the merits of the contractor's defense under Rule 56. Indeed, nowhere in

16  *Campbell*'s discussion of *Yearsley* does the Supreme Court make any reference to subject

17  matter jurisdiction. The Court finds this omission telling because courts, including the

18  Supreme Court, "have an independent obligation to determine whether subject-matter

19  jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H*

20  *Corp.*, 546 U.S. 500, 514 (2006). As such, the Supreme Court's application of the Rule 56

21  standard, as opposed to the Rule 12(b)(1) standard, further supports the finding that

22  *Yearsley* immunity is an affirmative defense for which Defendants bear the burden of

23  proving at trial. *See Campbell-Ewald Co.*, 577 U.S. at 168 (reviewing the merits of

24  Campbell's *Yearsley* immunity claim and stating that "[a]t the pretrial stage of litigation,

25  we construe the record in a light favorable to the party seeking to avoid summary

26  disposition").

27      For the foregoing reasons, the Court disagrees with Defendants and finds that their

28  claim to *Yearsley* immunity does not implicate the Court's subject matter jurisdiction, but

19-cv-02049-AJB-AHG

rather, is an affirmative defense for which they bear the burden of proving. Accordingly, the Court **DENIES** Defendants' Rule 12(b)(1) motion on that basis.

### B.      Defendants Are Not Entitled to *Yearsley* Immunity

Even assuming that Defendants timely brought a motion for summary judgment on their *Yearsley* defense (they did not), the Court finds that they are not entitled to summary adjudication based on *Yearsley*. The Ninth Circuit has explained that this immunity "is limited to cases in which a contractor 'had no discretion in the design process and completely followed government specifications.'" *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) (citation omitted). The Supreme Court reiterated this in *Campbell* when it noted that "the contractor's performance in compliance with all federal directions" was "[c]ritical in *Yearsley*." *Campbell-Ewald Co.*, 577 U.S. at 167 n.7. "Crucial, then, to a *Yearsley* analysis is not merely the existence of a government contract, but whether the government contractor met the 'explicit instructions' it received from the government and did not overstep federal law while acting on those instructions." *Pizarro v. Nat'l Steel & Shipbuilding Co.*, No. C 19-08425 WHA, 2021 WL 1197467, at *1 (N.D. Cal. Mar. 30, 2021).

As did the Supreme Court in *Campbell*, the Court applies Rule 56 and "construe[s] the record in a light favorable to the party seeking to avoid summary disposition," in this case, Plaintiffs. Upon review of the parties' evidence, the Court finds that there is a lack of evidence that Defendants' failure to warn against asbestos can be attributed to their compliance with federal directions concerning the installation and repair of their asbestos-containing equipment. *See Campbell-Ewald Co.*, 577 U.S. at 167 n.7; *Cabalce*, 797 F.3d at 732. The record shows no government direction preventing Defendants from warning against asbestos hazards.

Plaintiffs' naval expert, Captain Arnold Moore, detailed in his report that General Specifications for Machinery "required manufacturers to provide installation, operation and maintenance instructions as well as 'safety precautions' as an essential part of Instruction Books for machinery and electrical equipment." (Doc. No. 185-16 at 24.) These

specifications "are the basis of all special specifications, form part of all machinery contracts, and the practice set forth therein shall govern in all cases unless modified or excepted by the special specifications issued in each individual case." (*Id*.)

In the 1960s, when Mr. Spurlin served in the Navy, Military Specification MIL-M-15071D, dated June 6, 1961, stated that "'WARNINGS' are clearly required for: 'operating procedures, practices etc. which will result in personal injury or loss of life if not correctly followed.'" (*Id.* at 25.) The 1962 edition of this specification maintained the previous warning requirements and added a requirement that installation instructions must include safety precautions during equipment unpacking and installation, as well as a requirement that repair instructions must include "any cautions or warning which must be observed to protect personnel and equipment." (*Id.* (internal quotations omitted).) The August 1967 version of the specifications contained essentially the same safety requirements. (*Id.*)

Based on this information and his experience supervising the preparation of Naval equipment technical manuals and reviewing the specifications with Navy officials and employees, Captain Moore opined that "[t]he Navy relied heavily upon its equipment manufacturers to identify hazards associated with their products. The hazards associated with exposure to asbestos and asbestos containing materials and equipment were not exempt." (*Id*. at 23.) The evidence therefore reveals that Defendants did not completely lack discretion over its product warnings and that the lack of asbestos-related warnings—the alleged injury-causing condition—was not mandated by any specific government instruction. Defendants therefore cannot claim compliance with its government contract to shield itself from liability in this case.

The Court finds that *Yearsley* is distinguishable because the act giving rise to the plaintiff's injury in that case "was all authorized and directed by the Government of the United States." 309 U.S. at 20. The same cannot be said in this case. Here, there is no evidence that the failure to warn about asbestos was expressly authorized and directed by the United States. Indeed, the General Specifications for Machinery states, "The Bureau's

1  approval of any type of plan shall not relieve a contractor of any material or performance

2  obligation under the contract, [e.g., inclusion of warnings and safety precautions in

3  manuals] unless a question in regard thereto has been brought to the Bureau's attention in

4  writing, and specific waiver of such requirement by the Bureaus has been obtained." (Doc.

5  No. 181-6 at 129). Although there was a process by which the Navy could have modified

6  or excepted a particular warning or safety precaution, Defendants presented no evidence

7  of government instructions or special exceptions that precluded or prohibited them from

8  providing asbestos-related warnings for their products.[4] On the contrary, as Captain Moore

9  reported, the Navy authorized manufacturers to include health and safety warnings in the

10  equipment manuals and relied heavily on Defendants to identify hazards associated with

11  their products. (Doc. No. 185-16 at 23.)

12      As such, the Court finds this case more analogous to *Campbell*, where the Navy

13  authorized and instructed Campbell to send text messages only to individuals who opted in

14  to receive marketing solicitations and relied on Campbell's representation that the message

15  recipient list contained only those who consented. *See* 577 U.S. at 168. The Navy's

16  recruiting messages, however, were sent to unconsenting recipients in violation of the

17  Telephone Consumer Protection Act. *See id.* Upon review of the evidence, the Supreme

18  Court held that Campbell was not entitled *Yearsley* immunity because the record revealed

19  no basis to find that he complied with the Navy's explicit instructions. *See id.* Messaging

20  unconsenting recipients could not be attributed to a government instruction. *See id.*

21      Similarly, here, Defendants' failure to warn about asbestos hazards cannot be

22  attributed to any specific government instruction. There being no government instruction

23  expressly prohibiting Defendants from providing asbestos-related health warnings, the

24  Court finds that Defendants' liability for failing to warn Mr. Spurlin of the dangers of

25

26  ────────────

27  [4] Defendants argue that Captain Moore conceded that the Navy did not require asbestos warnings in instruction manuals, but this argument is unavailing. The Court declines to construe the approval of a plan that does not require asbestos warnings to equate to one that prevents them, especially where the Navy

28  relied on manufacturers to identify hazards associated with their products.

1    asbestos did not arise from full compliance with their government contract duties. Again,

2    the Court highlights that the Navy authorized manufacturers to provide warnings and relied

3    heavily on them to identify hazards associated with their products. Affording Defendants

4    immunity under these circumstances would therefore seem to unfairly reward Defendants

5    for their lack of due diligence in identifying and including warnings that the Navy relied

6    on them to provide. Construing *Yearsley* in this way would appear to produce absurd

7    results.

8         Accordingly, based on the foregoing, the Court finds that *Yearsley* does not protect

9    Defendants from liability in this case, and thus, they are not entitled to summary

10    adjudication on that basis.

11    **III.    CONCLUSION**

12         For the reasons stated, the Court **DENIES** Defendants' motion to dismiss for lack

13    of subject matter jurisdiction.

14         **IT IS SO ORDERED**.

15    Dated:  October 21, 2021

16                                   Hon. Anthony J. Battaglia

17                                   United States District Judge

18

19

20

21

22

23

24

25

26

27

28

19-cv-02049-AJB-AHG